Filed 12/12/24  In re Lucas W. CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re LUCAS W., a Person Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent, v. R.P., Defendant and Appellant. | F087821 (Super. Ct. No. 23CEJ300161-2) OPINION |

### THE COURT[*]

APPEAL from orders of the Superior Court of Fresno County.  Kimberly J. Nystrom-Geist, Judge.

Shaylah Padgett-Weibel, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Levy, Acting P. J., Snauffer, J. and DeSantos, J.

Appellant R.P. (mother) is the mother of Lucas W. (the child), who is the subject of this dependency case. Mother appealed from the juvenile court's orders issued at a combined jurisdiction and disposition hearing on March 25, 2024, which resulted in the child being placed in foster care and family reunification services denied as to mother. After reviewing the juvenile court record, mother's court-appointed counsel informed this court she could find no arguable issues to raise on mother's behalf. This court granted mother leave to personally file a letter setting forth a good cause showing that an arguable issue of reversible error exists. (*In re Phoenix H.* (2009) 47 Cal.4th 835, 844 (*Phoenix H.*).)

Mother filed a letter brief requesting that the child be returned to her custody because she has participated in various programs since the child's removal. She does not, however, allege the juvenile court erred in removing the child or denying family reunification services. We conclude mother failed to address the disposition hearing or set forth a good cause showing that any arguable issue of reversible error arose from the disposition hearing. (*Phoenix H.*, *supra*, 47 Cal.4th at p. 844.) Consequently, we dismiss the appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

In June 2023, the Fresno County Department of Social Services (department) filed a petition alleging the child and his siblings, Li.W. and L.W. (collectively, the children) were described by Welfare and Institutions Code section 300, subdivisions (a), (b)(1), (e), and (i).[1] The petition alleged that the child's one-year-old twin brother Li.W. (brother) nearly drowned when he was left unattended in a bathtub by mother with the child and one-and-a-half-year-old L.W. (sister). The allegations also involved unsanitary conditions in the home and mother's substance abuse problem with marijuana. Mother tested positive for marijuana on the day following the incident, and she admitted to using

---

[1] All further statutory references are to the Welfare and Institutions Code.

2.

marijuana two to three times per day. Brother was hospitalized with limited brain function, and the child and sister were taken into protective custody by law enforcement.

On June 20, 2023, mother was present and represented by counsel for a continued detention hearing. The child's father, Lo.W. (father) was also present while in custody. The child was detained from mother's custody, and a combined jurisdiction and disposition hearing was set for July 25, 2023. The juvenile court also ordered that mother and father be offered parenting classes, evaluations and recommended treatment for substance abuse, mental health, domestic violence, and random drug testing.

After multiple continuances, a contested jurisdiction and disposition hearing began on October 17, 2023. Mother testified that she placed the children in the bathtub and started running the water on the date of the incident. She claimed that she was "foggy brained" and not thinking straight because she was feeling sick. Mother realized that she forgot the towels, so she left the bathroom for approximately two to five minutes to look for towels.

While mother was looking for towels, the 18-year-old son of mother's boyfriend discovered brother under the water and unresponsive. When she returned to the bathroom, mother found brother was face down under the water. Mother pulled brother out of the water and began performing CPR, and directed her boyfriend's son to call 911. Brother was transported to the hospital where he was intubated, sedated, had limited brain function, and was deemed unresponsive. Mother did not initially disclose that her boyfriend's son found brother because they did not want to get anyone in trouble. Mother accepted full responsibility for the drowning, and she admitted that she was neglectful and failed as a parent. However, she would not accept the allegations of nonaccidental harm and abuse because she did not intend for brother to drown.

Mother denied that she used marijuana on the date of the incident, but she admitted to smoking marijuana on the day before the incident. She spoke to her therapist and found healthier coping skills that she could use instead of smoking. Mother had

spoken with a substance abuse specialist that the department referred her to and was told that she was not eligible for services.

Mother was attending a 14-week parenting class, which the department referred her to. She learned stress management and self-care, and she was due to graduate soon. Mother was also participating in weekly mental health therapy after receiving a referral from the department; her treatment goals included reducing her anxiety attacks and recovering from her own childhood trauma, as well as the trauma from brother's drowning. Mother had also started attending child abuser's treatment and domestic violence programs.

Dr. Victor Vargas, a pediatric intensivist in the pediatric critical care unit who cared for brother, also testified at the hearing. Vargas could not say how long brother was under water, but he could say brother's brain did not get enough oxygen for a significant time. Neither Vargas nor his colleagues believed the drowning was intentional.

On November 6, 2023, the juvenile court found the department met its burden of proving the jurisdictional allegations under section 300, subdivision (b) by clear and convincing evidence, but the department failed to prove the allegations under section 300, subdivisions (a), (e), and (i). Based on the court's findings, the department conceded the reunification bypass provision of section 361.5, subdivision (b)(5) was inapplicable, but it still requested mother be denied services under section 361.5, subdivision (b)(6), as the court found the section 300, subdivision (b) count true by clear and convincing evidence.

The disposition hearing was continued for an additional ruling on November 16, 2023. As to disposition, the court ultimately found that section 361.5, subdivision (b)(6) did not apply, as the court could not find mother inflicted nonaccidental harm on brother. Family reunification services were ordered for mother and father, and a six-month review hearing was set for May 14, 2024.

Mother's court-ordered case plan consisted of parenting classes, evaluations and any recommended treatment for domestic violence, substance abuse, and mental health,

and random drug testing. Supervised visitation was ordered between mother and the children at twice per week, and mother was also ordered to participate in a psychological evaluation and risk assessment.

Shortly after the disposition hearing, brother passed away after succumbing to his injuries from the drowning. On December 8, 2023, the department filed a subsequent dependency petition under section 342. The subsequent petition contained a single count under section 300, subdivision (f), which alleged mother caused the death of brother, as brother nearly drowned when the children were left unattended in the bathtub, brother succumbed to his injuries and passed away, and his injuries were not sustained ordinarily but instead as the result of unreasonable or neglectful acts of the person who had him in her care or custody.

The department's report for the jurisdiction and disposition hearing on the section 342 petition, dated January 24, 2024, recommended that the allegation in the petition be found true and mother be denied family reunification services pursuant to section 361.5, subdivision (b)(4).

Mother completed her parenting classes. She had attended a substance use disorder orientation on July 7, 2023, and was found to not meet medical necessity for treatment. Mother enrolled in random drug testing on June 20, 2023, and tested positive 18 times from June 14 through August 25, 2023, did not test on August 5, August 20, and October 18, and refused to test on November 9, 2023. Mother claimed she forgot to call on October 18 to see if she needed to test, and the November 9 test was marked as refused because she was unable to provide a large enough urine sample.

Mother attended a domestic violence inventory on July 3, 2023, and she was recommended to complete a domestic violence program and the child abuse intervention program. Mother completed nine of 52 sessions of the child abuse classes, with one missed class, and had completed six of 26 sessions of the domestic violence program, missing two classes. Mother completed a mental health assessment on July 24, 2023, and

5.

was found to meet medical necessity for treatment and recommended to complete individual treatment and clinical case management. She was attending weekly sessions with a clinician.

The department initiated a referral for a psychological evaluation and risk assessment on November 20, 2023, which mother participated in on February 16, 2024. Mother discussed during the clinical interview how she was raised in the foster care system from ages nine to 18 after finding her mother dead. Her former foster parents were caring for the children while they were in foster care. She reported receiving counseling for anxiety and trauma in 2015, but she denied treatment with a psychiatrist or inpatient hospitalization.

When asked to explain the events leading to the children's removal, mother told the assessor that she was giving the children a bath and was getting a towel for them. She failed to unplug the drain and delegated her boyfriend's oldest son to watch the children while she looked for a towel, but he was wearing headphones and failed to listen to the children. When she returned with the towel, she found brother unresponsive and attempted to resuscitate him.

The assessor noted there appeared to be conflicting information regarding the events that preceded brother's death. Mother appeared slightly defensive when asked why her boyfriend's son would fabricate his response to police that mother was outside talking to someone in a vehicle while under the influence of marijuana. Mother explained he did not want to appear neglectful in caring for the children when he was responsible for them at the time.

The evaluation and assessment showed that mother appeared to have a chronic trauma history as both a child and an adult and may have had limited insight and judgment as to how her previous trauma affected her parenting skills. It was recommended that mother be evaluated for the use of psychotropic medications to help with coping; participate in certain psychotherapy services to help process her past

6.

cumulative trauma; and participate in mental health treatment to provide additional tools to cope with her childhood trauma, discuss potential stressors in her life, and improve her insight and judgment.

The report noted that while mother had the capacity to use reunification services, she would "need more direct communication about her lack of insight" which "could be a barrier to her parenting skills." The report continued, if the children were returned to mother or unsupervised visits were ordered, the level of risk to the children was considered moderate to high based on mother's impaired insight and poor judgment, and difficulty acknowledging full responsibility for the death of brother. However, the report also noted that mother had made progress in, and was actively engaged in, reunification services, which significantly decreased the potential risk of abuse of the children.

A contested and combined jurisdiction and disposition hearing on the section 342 petition began on March 22, 2024. Mother testified about her participation in reunification services—she graduated from the parenting program and was participating in the child abuse program, the domestic violence program, random drug testing, and therapy. Mother's last positive drug test was on August 25, and her first negative test was on September 1, 2023. Mother was about halfway through the 52-week child abuse class. Mother had participated in more than 10 sessions with her current therapist and 10 to 15 sessions with her previous therapist.

Mother felt guilty about and responsible for brother's death. Mother discussed these feelings with her therapist and was trying to move past the incident by thinking about what she should have done differently and how to move forward. Mother did not believe the psychological assessment was accurate because she had coping skills to deal with her prior trauma, and she did not believe the trauma would negatively affect her parenting.

Mother admitted she sometimes needed time away from the children to control her anxiety. Mother testified when she was triggered, she experienced anxiety symptoms

such as being defensive, shaking, hyperventilating, and crying, but she did not believe the triggers interfered with her parenting. Mother believed the children should have been removed from her because she was neglectful by leaving the children in the bath unattended. Mother admitted she was responsible for the injuries that led to brother's death.

The third-party supervisors of mother's visits were mother's friends who helped and supported her during the case. Mother was aware of reports that the child was having nightmares after visiting her; mother said that after she was made aware of this, she asked for family therapy. Mother was aware that sister did not want to get into the car to come to visits.

Mother was not seeing a psychiatrist. She was aware of the results of the psychological evaluation and while she was not opposed to seeing a psychiatrist, she did not think she needed one since she had seen one in the past. Mother believed she was stable enough to care for her children. Mother could not pinpoint when she became stable, but stated she was working on herself and was progressing through therapy and classes.

Deyse Raygoza, the social worker assigned to the case and who supervised some of mother's visits, had not seen mother behave inappropriately during visits. The third-party supervisors who had been supervising visits since September 2023 provided written reports of visits; there was nothing in those reports that would indicate the child and sister were not safe with mother. The reports showed that visits tended to go well, mother interacted with the child and sister, and there were no concerns. The child and sister recognized she was their mother. Raygoza had observed the child and sister were happy during visits and physically affectionate with mother, and they would go to her if she asked for a hug. Raygoza had not seen the child upset at the end of visits and had not seen mother put him down for a nap during a visit.

Raygoza believed the child and sister were attached to mother, but she was not trained to assess the bond between a parent and child; instead, bonding assessments were performed by social worker practitioners in the adoption assessment unit. Raygoza also believed the child and sister were attached to the care providers, as they sought them for comfort, and they were more affectionate with and attached to the care providers than mother.

Nichole Castanon-Bletz, a social worker supervisor who supervised the case since it was assigned to Raygoza, had not seen a change in mother's behavior in her interactions with mother. The department's concern was mother's inability to understand how the situation came to be and her inability to verbalize what would be different. Mother had never told Castanon-Bletz that the children should have been removed or that she was an unsafe parent. At first mother believed the children had been removed due to the uncleanliness of the home; the department had to explain that was a small piece of the problem and the department was more concerned about brother and her inability to provide protection for the children.

Castanon-Bletz did not believe more services would result in mother being safely able to provide for the child and sister by June 2024, as mother had been through services since detention. She believed there was still a risk to the child and sister were they to be returned to mother's care, as the department was having a hard time understanding what would be different. The problem concerned mother's poor judgment placing her children at risk, rather than the specific incident in the bathroom.

In closing argument, the department's counsel requested that the court find the allegation pursuant to section 300, subdivision (f) true by clear and convincing evidence and deny family reunification services to mother pursuant to section 361.5, subdivision (b)(4). The department's counsel also argued that it had not been proven that reunification services were in the child's best interest.

Mother's counsel submitted on the court's discretion regarding the issue of the jurisdictional allegation, but she asserted that the court should provide mother family reunification services pursuant to section 361.5, subdivision (c)(2). Her counsel noted that mother had participated in the services the department provided and had tested clean since August 2023. Counsel asserted mother's testimony showed mother was very genuine, she took responsibility for what happened, and with ongoing counseling she would get better. Counsel acknowledged the case involved the death of brother, but argued the court should consider that this was an isolated incident that was not deliberate. Counsel asserted the child and sister had a clear bond with mother and mother was willing and able to provide them with stability.

The child's attorney asked the juvenile court to find the section 300, subdivision (f) count true and believed the court should find it was in the child's best interest to offer mother reunification services. The attorney argued the department had not given mother credit for what she had done in this case and for her current fitness; mother had been participating in every court-ordered service, and she was doing well. While her children were young, mother was participating in services and brother's death was accidental.

The juvenile court provided its ruling on March 25, 2024. The court found the department demonstrated by clear and convincing evidence that the section 300, subdivision (f) count was true and the child and sister were described by that subdivision. Regarding disposition, the court found section 361.5, subdivision (b)(4) applied to mother, as the court found the subdivision (f) count true by clear and convincing evidence.

The juvenile court then turned to whether it could find by clear and convincing evidence that reunification was in the child's best interest. The court assessed the factors set forth in *In re Ethan N.* (2004) 122 Cal.App.4th 55. The court was extremely concerned that mother told the psychologist a completely different version of what led to

10.

brother's drowning. The court found the social worker and the social worker supervisor to be credible, while it found mother credible on some issues but not others.

The juvenile court found the "gravity" of the problem was mother's failure to pay attention to the children or acknowledge what happened that day, and that mother did not understand the overarching need to provide her children with safe and secure circumstances. The court stated that having considered each of the *Ethan N.* factors and the evidence before the court, it could not find by clear and convincing evidence that reunification was in the child and sister's best interests.

Therefore, as to the child and sister, the juvenile court found reunification services were not to be provided to mother under section 361.5, subdivision (b)(4). Family reunification services were provided for the child's father, and a six-month review hearing was set for May 14, 2024. A section 366.26 hearing was set for sister on July 23, 2024.[2]

## DISCUSSION

An appealed-from judgment or order is presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) It is the appellant's burden to raise claims of reversible error or other defect and present argument and authority on each point made. If the appellant fails to do so, the appeal may be dismissed. (*In re Sade C.* (1996) 13 Cal.4th 952, 994.)

In her letter brief, mother requests that this court find that return of the child to mother's custody is in his best interest. Mother cites to her updated progress in the various services that she was participating in at the time of the disposition hearing on the section 342 petition. However, she did not previously challenge the sufficiency of the evidence supporting the juvenile court's finding that the child should be removed from

---

[2]     Mother filed a petition for an extraordinary writ in sister's case, which we denied. (*R.P. v. Superior Court* (July 10, 2024, F087822) [nonpub. opn.].)

her care at the disposition hearing. Nor does she claim that the court erred when it refused to find that reunification services were not in the child's best interest. Rather, she appears to contend that we should reweigh the evidence and place the child in her custody. We conclude mother fails to show good cause that this issue merits additional briefing.

Having reviewed mother's supplemental brief, we find mother has not made a showing of good cause that an arguable issue exists. (*Phoenix H.*, *supra*, 47 Cal.4th at p. 846.) Mother's letter brief furnishes no valid argument with supporting legal authorities for her purported claims of error. (See *In re Sade C.*, *supra*, 13 Cal.4th at p. 994 [parents must " 'present argument and authority on each point made' "].)

We acknowledge that mother presented some favorable evidence at the hearing, and we commend her continued efforts to heal after the tragic loss of her child. However, our role as an appellate court is not to substitute our judgment for that of the juvenile court or reweigh the evidence. When all of the evidence is considered together, a finding that there was a substantial danger to the child if placed in mother's care was supported by substantial evidence. Mother's lack of protective capacity and failure to fully understand how her actions had fatal consequences were particularly concerning, as the child is not able to protect himself at such a young age. Accordingly, our review of the challenged orders confirms appellate counsel's determination that no arguable issues exist.

In sum, mother has not raised any arguable issues stemming from the disposition hearing. Further, though we are not required to, we have reviewed the record as it relates to the petition under section 342, and we have found no arguable issues for briefing. (*Phoenix H.*, *supra*, 47 Cal.4th at pp. 841–842.) Accordingly, we dismiss the appeal.

## DISPOSITION

This appeal is dismissed.